IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-00390-03-CR-W-DW |
| ) | |
| LARRY P. GOODYKE, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Larry P. Goodyke's Motion to Suppress (doc. #89). Defendant contends that evidence obtained as a result of an unlawful search and seizure of two UPS packages on April 1, 2008, and the search and seizure of various items from his residence on April 8, 2008, must be suppressed. The government filed a Response to Defendant Larry P. Goodyke's Motion to Suppress (doc. #97). For the reasons set forth below, it is recommended that defendant's motion be denied.

I. INTRODUCTION

On August 6, 2008, the Grand Jury returned an eighteen count superseding indictment[1] against defendants David L. Robinson, Daniel W. Denham, Larry P. Goodyke, Blake W. Bestol and John D. Conrey. Defendant Goodyke is charged in Count One with participating in a conspiracy to procure and sell diplomatic identification cards in violation of 18 U.S.C. § 371, and in Counts Two, Eight, Twelve, Fifteen and Seventeen with procuring or distributing fraudulent diplomatic

---

[1] Defendants Goodyke, Bestol and Conrey were not charged in the original indictment which was returned by the grand jury on December 4, 2007.

identification cards in violation of 18 U.S.C. § 1017.

On February 25, 2009, oral argument was held before the Court concerning defendant's motion to suppress. Defendant Goodyke appeared by telephone and was represented by court appointed counsel Alex S. McCauley. The Government was represented by Assistant United States Attorneys Brian P. Casey, J. Daniel Stewart and M. Alex Menzel.

Government counsel argued that there was no need for a hearing on the motion to suppress because even if all the facts pertaining to the opening of boxes at the UPS facility were excised from the affidavit, there is still probable cause to support the issuance of the search warrant. (Tr. at 3, 7) The government advised that it does not intend to offer any testimony at trial from UPS employees or the federal agents concerning what happened at the UPS facility or what the agents saw when the UPS boxes were opened. (Tr. at 3, 17-18) Further, the government does not intend to offer photographs of the contents of the packages that were attached to the affidavit as exhibits 11, 12 and 13 as evidence at trial. (Tr. at 17-18) Thus, exhibits 11, 12 and 13 should not be considered by the Court when making its probable cause determination. (Tr. at 11) Finally, the Court should disregard paragraphs 15(b), 15(d) and 16 of the affidavit as they pertain to the activities at the UPS facility and leads from those activities.[2] (Tr. at 11-12)

Thus, the issue before the Court is whether, after eliminating all facts pertaining to the opening of boxes at the UPS facility, probable cause exists to support the issuance of the search warrant. Given that this determination must be made based on the affidavit itself, there is no need

---

[2]Defense counsel agreed that paragraphs 15(b), 15(d) and 16 were the only paragraphs that needed to be excised from the affidavit. (Tr. at 15) (While the Court misspoke at one point and stated that paragraphs 15(a), 15(d) and 16 were to be excised (Tr. at 15), the discussion up to that point and the listing in the government's briefing clearly referred to paragraphs 15(b), 15(d) and 16.)

2

for the Court to hear from witnesses at a hearing.[3]

## II.  FACTS

A.   On February 27, 2009, the parties filed a Stipulation Regarding Affidavit and Search Warrant.  The Stipulation provides in part:

> 1.  On December 5, 2007, Defendant David Robinson, together with co-Defendant Daniel Denham, were charged with fraudulent use of the United States Department of State Seal in connection with the manufacture and distribution of "diplomatic identification cards."  On August 6, 2008, an eighteen-count Superseding Indictment (Doc. No. 34) was returned against Defendants Robinson and Denham and three additional defendants, Larry Goodyke, Blake Bestol, and John Conrey, in connection with these diplomatic identification cards.
>
> 2.  On January 26, 2009, Defendant Goodyke filed a Motion to Suppress (Doc. No. 89) certain evidence related to and obtained during the execution of a search warrant at his residence in Henderson, Nevada, on April 8, 2009, on the grounds that the search warrant affidavit contained statements derived from an unlawful search of two packages.
>
> 3.  On February 17, 2009, the United States filed its Response in Opposition to Defendant Goodyke's Motion to Suppress.  In its Response (Doc. No. 97), the United States referenced an affidavit submitted by United States Department of State Special Agent Jennifer L. Sieg, in support of an application for a search warrant for Defendant Goodyke's residence in Henderson, Nevada.  A copy of Special Agent Sieg's affidavit is attached as Ex. 1, and a copy of the search warrant executed at Defendant Goodyke's residence is attached as Ex. 2.
>
> 4.  On February 18, 2009, the United States provided the Court a copy of Special Agent Sieg's affidavit for review in chambers.  A copy of the cover letter enclosing the affidavit was provided to the attorneys for all parties in the above-captioned matter.
>
> 5.  On February 25, 2009, the Court held oral argument on whether an evidentiary hearing on Defendant Goodyke's Motion to Suppress was required.  During the hearing the Court requested that the parties file a document that attaches Special Agent Sieg's affidavit and the search warrant for Defendant Goodyke's home.  The document is

---

[3]Defense counsel agreed that the proper procedure is to excise references to the illegally obtained evidence and then make a decision as to whether there is sufficient probable cause to support the search warrant. (Tr. at 9-10)  Further, defense counsel agreed that a hearing was not necessary as the probable cause determination needs to be made from the four corners of the affidavit. (Tr. at 8)

3

to state that the parties agree that the attached documents are true and correct copies of the affidavit and search warrant referenced in Defendant Goodyke's Motion to Suppress (Doc. No. 89) and the United States' Response (Doc. No. 97).

      6.      The United States, through its undersigned attorneys, hereby states its agreement that Exs. 1[4] and 2 attached hereto are true and correct copies of the affidavit and search warrant referenced in Defendant Goodyke's Motion to Suppress (Doc. No. 89) and the United States' Response (Doc. No. 97).

      7.      Defendant Goodyke, through his undersigned attorney, hereby states his agreement that Exs. 1 and 2 attached hereto are true and correct copies of the affidavit and search warrant referenced in Defendant Goodyke's Motion to Suppress (Doc. No. 89) and the United States' Response (Doc. No. 97).

(Doc. #104)

    B.    The Affidavit submitted in support of the search warrant consists of 21 pages and 17 exhibits. It provides in part:

      4.      My investigation began on January 29, 2008 when I was contacted by Upland Police Department Officer Brian Garcia who reported that Rudy Scott Kranwinkel presented diplomatic identification credentials and claims to have diplomatic immunity. Special Agent (SA) Alex Lai and I interviewed Kranwinkel. Kranwinkel stated that:

        a.    Associates of Kranwinkel, Steve Wenborne and Kyle Greg Larson, obtained diplomatic immunity from Larson's friend, whom law enforcement later identified as Larry GOODYKE. Wenborne showed Kranwinkel his Diplomatic/Ambassador badge, identification documents, and a diplomatic license plate.

                                       * * *

        e.    Kranwinkel stated that after a few weeks he received an apostille number and document from the Secretary of State of California. Kranwinkel gave the documents to Wenborne. A few weeks later, Wenborne called Kranwinkel and informed him that the badge, license plate, Right to Travel card, and diplomatic immunity credentials had arrived at Wenborne's residence.

---

[4]Exhibit 1 is the affidavit of Special Agent Jennifer Sieg submitted in support of the search warrant. As submitted to the issuing court, the affidavit had a number of attachments. Attachment A was a description of the premises to be searched; Attachment B described the items to be seized and Exhibits 1 through 17 were submitted in support of the affidavit.

4

Wenborne sent the diplomatic media to Kranwinkel.

* * *

6. On February 28, 2008 Judge Oswald Parada from the Central District of California issued a search warrant, number ED08-0068M, for Wenborne's residence at 9120 Mignonette Street, Rancho Cucamonga, CA, 91701. Agents from Diplomatic Security Service and officers from San Bernadino Sheriff's Department executed the search warrant. Agents seized fraudulent diplomatic badges, credentials, identification documents, tax exempt cards, license plates, computer software, identification card printers, and fraudulent diplomatic media. See Exhibit 3. Agents also obtained a verbal confession from Wenborne stating that he was making, printing, and distributing the fraudulent media to friends, family and associates via the Internet.

7. On March 13, 2008, at Wenborne's request, SA Lai and I interviewed Wenborne at the Los Angeles Field Office. During the interview Wenborne told agents the following:

   a. Approximately eight months earlier Larson advised Wenborne that he, his wife Candace Larson, and her father Rick Clapp had diplomatic immunity. Larson showed Wenborne his diplomatic license plate, Ambassador/Diplomat badge, credentials, and right to travel card.

   b. Larson advised Wenborne that Larry GOODYKE makes the diplomatic media. Larson gave Wenborne GOODYKE'S phone number, (702) 558-6937, and instructed Wenborne to call GOODYKE to order the diplomatic media for himself and girlfriend, Alex Fiorentino.

   c. Wenborne called GOODYKE and spoke with him about being registered as a diplomat. GOODYKE advised Wenborne that he makes the identification cards on his home computer and custom orders the badges. GOODYKE told Wenborne it would cost $1,500 for each diplomatic badge/credential set but if he ordered Fiorentino and Wenborne's together it would cost $1,000 each. Wenborne exchanged email addresses and mailing address with GOODYKE. Wenborne sent GOODYKE a money order for $2,000.00. Although Wenborne could not remember what address GOODYKE provided, on March 13, 2008, Wenborne obtained GOODYKE'S addresses from Larson and provided them to Your Affiant. The mailing addresses which GOODYKE provided to Wenborne were the SUBJECT PREMISES, 542 Kristine Lane, Henderson, Nevada, 89011 and GOODYKE'S P.O. box address, 631 N. Stephanie St #198, Henderson, NV 89014.

   d. GOODYKE sent Fiorentino and Wenborne Apostille processing instructions, Act of State forms in their names, and a cover letter to submit to the

5

Secretary of State.

e. Wenborne and Fiorentino filled out the paperwork and sent it to the Secretary of State of California.

f. After approximately two weeks, Fiorentino and Wenborne received Apostille numbers in the mail. Wenborne and Fiorentino emailed a copy of the Apostilles, pictures of themselves, and dates of birth to GOODYKE for processing.

g. Approximately six weeks later, Wenborne and Fiorentino received diplomatic badges, wallets, and credential cards in the mail from GOODYKE.

h. Wenborne advised that he and Larson helped Deneane Stevenson, a friend of Wenborne's obtain diplomatic media from GOODYKE.

i. Wenborne and Larson decided to start their own business and website to inform people about their diplomatic rights and make money.

j. Wenborne went to the Smith & Warren website, which sells police badges, and ordered six nicer looking badges and wallets for himself, Fiorentino, Larson, Candace Larson, and Rick Clapp.

k. Wenborne thought the "Right to Travel" card Larson obtained from GOODYKE looked fake. Thus, Wenborne and Larson purchased a card making machine and printer so they could produce documentation for themselves. Using this equipment and Wenborne's computer, Wenborne made Right to Travel card and tax exempt card templates and produced cards for himself, Fiorentino, Larson, Candace Larson, and Clapp.

l. Wenborne researched the Office of Foreign Missions website. (OFM is the branch of the U.S. Department of State that ensures that all diplomatic benefits, privileges, and immunities are properly exercised in accordance with federal and international laws.) Wenborne noticed OFM was issuing new licenses plates and the old ones issued by GOODYKE would soon be obsolete. Thus, Wenborne stated he designed a license plate image on Photoshop on his computer. He emailed the image to www.autoplates.com and placed an order for himself, Larson, and Candace Larson. A few weeks later, Wenborne received the plates.

m. Wenborne also ordered and produced the diplomatic media for Rudy Scott Kranwinkel and for William Ballou.

6

n.  Wenborne told agents that Larson showed his new Right to Travel card, tax exempt card and diplomatic license plate to GOODYKE. GOODYKE asked Larson to get him Right to Travel and tax exempt cards as well.

o.  GOODYKE began to email Larson the names of people that also wanted Right to Travel and Tax Exempt cards. Larson emailed the names to Wenborne and Wenborne produced the cards, sent the cards back to Larson and Larson personally delivered the cards to GOODYKE at a seminar.

p.  Wenborne advised that GOODYKE claims to have produced documents for over 800 people and has registered 30 people from Arizona as diplomats in the month of March. Wenborne informed agents that GOODYKE claims that there are 4 or 5 chapters throughout the United States and over 20,000 people have been registered as diplomats through these chapters. Wenborne stated that GOODYKE gives seminars on the topic of diplomatic immunity.

8.  Subsequent to the interview Wenborne supplied:

a.  A written statement that summarizes his association with GOODYKE and how he obtained the false Diplomatic media.

b.  A piece of paper containing the Larry GOODYKE's address, P.O. Box, phone number, and web address. The address the paper supplied is the SUBJECT PREMISES, 542 Kristen Lane, Henderson, NV 89011. The paper also supplied a P.O. Box address for GOODYKE at 631 Stephanie St #198, Henderson, NV 89014. The phone number listed is (702) 558-6937 and the website is www.clsadusa.org.

* * *

10. On March 13, 2008 SA Lai called the badge manufacturer, Smith & Warren and asked if they had received an order for diplomatic badges from Wenborne. Smith & Warren confirmed that Wenborne placed an order through epolicesupply.com, an affiliate of Smith & Warren, for six badges. Smith & Warren advised that they had produced approximately 77 diplomatic badges for Larry GOODYKE. Smith & Warren advised they sent GOODYKE's orders to GOODYKE's post office box, 631 N. Stephanie St. #198, Henderson, NV 89014.

11. On March 14, 2008 I spoke with Alan Dennis and Jeremy McLean from www.epolicesupply.com. Dennis and McLean advised that they take diplomatic/ambassador badge and wallet orders from GOODYKE. Dennis and McLean advised that GOODYKE has ordered approximately 66 badges from epolicesupply.com. McLean stated that since March 2007, GOODYKE has been ordering diplomatic/ambassador badges from epolicesupply.com and has them sent to his P.O. Box, 631 N. Stephanie St. #198, Henderson,

7

NV, 89014.

12. McLean advised that when GOODYKE placed his first order, epolicesupply.com required him to provide a government identification card. Thus, GOODYKE supplied a photo identification card stating GOODYKE is an Ambassador and a Diplomatic Agent. On the back of the card it states "Diplomatic Security, U.S. Department of State: Registered, Certified, Authenticated by Nevada State Secretary, Apostille no. 87889." See Exhibit 8.

13. McLean stated that GOODYKE designed the seal that goes into the middle of the custom made badge and provided a photo of what he would like the badge to look like. See Exhibit 9.

14. McLean emailed me copies of the Apostille documents GOODYKE sends to epolicesupply.com to place his orders. The orders were placed from email address, mister5spot@cox.net. McLean advised that GOODYKE's last order was for four diplomatic/ambassador badges and wallets on March 25, 2008. See Exhibit 10. McLean also advised me that the GOODYKE placed a badge order on March 3, 2008 and informed me that the badge would be delivered to GOODYKE's post office box via UPS on April 1, 2008.

15. On April 1, 2008, SA Tim Ayers and I went to the UPS warehouse in Las Vegas, NV. UPS Security Manager David Van Gorder provided the following:

    a. GOODYKE receives packages to his P.O. box regularly from Smith & Warren Co.

                    * * *[5]

    c. GOODYKE received at SUBJECT PREMISES, two packages from Custom Engraving (Custom Engraving is company that produces and sells customized license plates) on February 5, 2008 and two more packages from Custom Engraving on March 6, 2008. Van Gorder verified that a package from Custom Engraving was scheduled for delivery to the SUBJECT PREMISES on April 1, 2008.

---

[5]Pursuant to the parties' agreement, the Court is disregarding Paragraph 15(b). Paragraph 15(b) provides:

Van Gorder tracked down the package from Smith & Warren, scheduled to be delivered to his P.O. box on April 1, 2008 and opened it up. The package contained one Ambassador/Diplomatic Agent badge no. A2007-08352 and a sales receipt for GOODYKE. See Exhibit 11.

8

* * *[6]

  17. On March 17, 2008, SA John Young and I went to the P.O. Box address, 631 N. Stephanie St. #198, Henderson, NV, 89014 supplied by Wenborne and Smith and Warren Co. The address is a UPS store. The UPS manager supplied ownership information for box number 198, the ownership application and a Nevada driver's license photograph of the owner. The owner is GOODYKE and the address he supplied for his residence is the SUBJECT PREMISES. In addition, the driver's license no. 365447963156 is a Nevada issued license to GOODYKE and the address listed on the driver's license is the SUBJECT PREMISES. See Exhibit 14.

  18. On March 17, 2008 SA John Young and I went by SUBJECT PREMISES and observed a tan Ford Expedition parked out front of the SUBJECT PREMISES displaying a diplomatic license plate no. D87889. See Exhibit 15. Record checks on March 28, 2008 revealed GOODYKE owns a 2006 Ford Expedition registered to SUBJECT PREMISES.

  19. On March 17, 2008 SA Young, Henderson Police Department Detective Denise Price, and I went to Larson's residence at 9360 Helena Avenue, Las Vegas, Nevada, 89129. Larson invited agents into his house and supplied the following information:

  a. An unknown person informed Larson of diplomatic immunity and told Larson that GOODYKE could help him obtain diplomatic immunity. Larson called GOODYKE and spoke with him about obtaining diplomatic immunity.

---

[6]Pursuant to the parties' agreement, the Court is disregarding Paragraphs 15(d) and 16. Paragraph 15(d) provides:

> Van Gorder tracked down the package from Custom Engraving, that was scheduled for delivery to the SUBJECT PREMISES on April 1, 2008 and a UPS security official opened the box. The box contained 13 diplomatic license plates ordered by GOODYKE through the Custom Engraving website, autoplates.com. See Exhibit 12. The box also contained a Custom Engraving-Autoplates.com sales receipt verifying that GOODYKE ordered 13 diplomatic plates to his SUBJECT PREMISES. The receipt also revealed that GOODYKE did not pay the sales tax for the plates and his total bill was $483.97. See Exhibit 13.

Paragraph 16 provides:

> On April 1, 2008, autoplates.com informed me that GOODYKE orders regularly from their store and his orders are placed via email. Autoplates.com advised that GOODYKE produces the photo image per plate on his computer and emails the image to autoplates.com for production. Autoplates.com provided an email address for GOODYKE of mister5spot@cox.net.

9

<blockquote>

GOODYKE advised Larson to fill out an Act of State form and send it to the Secretary of State to obtain an Apostille number. GOODYKE told Larson to send a copy of the Apostille issued document and number to GOODYKE along with a photograph and $1,000.00. GOODYKE advised Larson that he would order the badge and make the credentials, diplomatic license plate, and Right to Travel card on his home computer.

b. Larson ordered the diplomatic media for himself, his wife Candace Larson, and Rick Clapp. GOODYKE sent the Act of State forms to the Larson residence. Larson, Candace Larson, and Rick Clapp filled out Act of State and sent it to the Secretary of State. Once they received the Apostille numbers from the Secretary of State Larson sent the documents along with each person's photograph and $3,000.00 to GOODYKE. In return, GOODYKE order the badges and produced the diplomatic media.

c. Larson told agents that once he received his diplomatic media he attended one of GOODYKE's diplomatic immunity seminars where GOODYKE talked about sovereign rights.

d. Larson informed Wenborne about diplomatic immunity and put him in touch with GOODYKE. Larson stated that Wenborne, Fiorentino, and Stevenson all ordered badges and diplomatic media from GOODYKE.

e. Larson also told agents that he has been to SUBJECT PREMISES and that GOODYKE has three computer monitors set up, where he sits and produces diplomatic media. Larson advised that GOODYKE does not have a job but rather makes all of his money from the business of selling diplomatic media from his house. Larson further stated that GOODYKE has a number of friends that work with him and that GOODYKE has a personal assistant named Debe. Larson advised that GOODYKE told him there are chapters throughout the United States that sell the diplomatic media. Larson stated that GOODYKE has sold to approximately 800 people throughout the United States and the sold diplomatic media to 30 people in Arizona in the month of March.

* * *

j. Larson surrendered the diplomatic license plates that were on his truck, the diplomatic license plates that were on Candace Larson's car, and the diplomatic plate on Clapp's truck. Larson also gave agents six sets of diplomatic license plates produced by GOODYKE and two "No Trespassing" signs that list the occupants as diplomats also produced by GOODYKE. See Exhibit 16.

</blockquote>

20. Subsequent to the interview Larson supplied a written statement that summarizes his association with GOODYKE and how he obtained the false Diplomatic media.

21. On March 18, 2008 SA Young and I stopped by Larson's address and picked up the badges Larson retrieved from storage. Along with the badges were wallets and credential cards for Larson, Candace Larson, and Clapp. Clapp's and Candace Larson's wallets also contained a right to travel cards issued by GOODYKE. See Exhibit 17.

22. Larson e-mailed me copies of emails sent to him by GOODYKE. The emails from GOODYKE came from email address, mister5spot@cox.net, and contained information about seminars on diplomatic immunity, information about how to avoid registering your car, an affidavit and declaration written by GOODYKE stating diplomats cannot be arrested and do not have to pay taxes, and an email listing United States codes.

23. Record checks on March 28, 2008 revealed that GOODYKE's last known address as of March 2008 is the SUBJECT PREMISES. A record check for a driver's license issued to GOODYKE revealed GOODYKE has a Nevada driver's license #1702573103 and lives at SUBJECT PREMISES.

24. Based on my training and experience as a Special Agent with the State Department, I know that in order to obtain authentic diplomatic media issued by the U.S. government, an individual representing a member of a foreign government must be proposed to the U.S. Department of State Office of Protocol via diplomatic note. Once the Office of Protocol approves this appointment, the U.S. Department of State's Office of Foreign Missions issues driver's licenses, license plates, tax-exempt cards, and diplomatic identification cards. In the absence of this formal recognition process an individual has no diplomatic status or immunities therein.

25. I conducted record checks for GOODYKE through the U.S. Department of State's Office of Foreign Missions database. The data base maintains records on Diplomats and their relative immunity status. The record checks revealed that GOODYKE is not listed in the system as a Diplomat. Thus, does not have diplomatic immunity and is not entitled to a diplomatic driver's license, license plates, tax exempt card or diplomatic identification card.

* * *

(Doc. #104-1)

### III.  DISCUSSION

Defendant contends that the opening of the two packages by UPS personnel which was witnessed by federal agents constituted an invalid search and as such, those items must be suppressed. In addition, defendant contends that the search of his home should be suppressed as fruit of the poisonous tree. In response, the government has stipulated that it will not offer any testimony at trial from UPS employees or federal agents concerning what happened at the UPS facility on April 1, 2008, or what the agents saw when the UPS boxes were opened. Nor will the government offer into evidence at trial any photographs that were taken of the items found in the boxes when they were opened by UPS agents. In light of the government's agreement not to use this information at trial, defendant's motion to suppress the items seized from the two UPS packages is moot.

Defendant also contends that because the search warrant for Goodyke's residence was based upon an affidavit that relied upon information obtained from the unconstitutional search and seizure at the UPS facility, any evidence seized from the residence must be suppressed as fruit of the poisonous tree. The sufficiency of a search warrant affidavit which contains information from an unlawful search is evaluated after deleting that information. See United States v. Hernandez Leon, 379 F.3d 1024, 1027 (8th Cir. 2004)(quoting United States v. Templeman, 938 F.2d 122, 124-25 (8th Cir. 1991)). Based upon this law, the parties stipulated that paragraphs 15(b), 15(d) and 16 of the search warrant affidavit and exhibits 11, 12 and 13 to the search warrant affidavit should be excised from the Court's determination of whether sufficient probable cause existed.

Whether probable cause exists depends upon the totality of the circumstances. See Illinois v. Gates, 462 U.S. 213, 238 (1983). Probable cause for the issuance of a search warrant exists if there are facts sufficient to create a fair probability that contraband or evidence of a crime will be

12

found in the place to be searched. Id.; United States v. Wells, 223 F.3d 835, 838 (8th Cir. 2000).

Special Agent Jennifer Sieg supplied the affidavit in support of the search warrant. (See Fact A-3, supra) The affidavit reported that Steve Wenborne, who had confessed to making, printing and distributing fraudulent diplomatic media to friends, family and associates, provided information that defendant Goodyke was making diplomatic media. (See Fact B-6 and 7b, supra) Wenborne reported that Goodyke makes the diplomatic identification cards on his home computer and provided Goodyke's home address as 542 Kristen Lane, Henderson, Nevada 89011. (See Fact B-7c, supra) Kyle Larson advised agents that Goodyke told him that he makes credentials, diplomatic license plates and right to travel cards on his home computer. (See Fact B-19a, supra) Larson stated that he has been to Goodyke's home and that Goodyke has three computers set up to produce diplomatic media. (See Fact B-19e, supra)

The affidavit also contains information from Smith & Warren, a badge manufacturer. Representatives of that company advised that they produced badges for Goodyke and sent them to a post office box. (See Fact B-10, supra) Another company, epolicesupply.com advised that Goodyke has ordered diplomatic/ambassador badges from them. (See Fact B-11, supra) Further, Goodyke placed an order on March 3, 2008 that would be delivered to a post office box via UPS on April 1, 2008. (See Fact B-14, supra) Finally, UPS personnel informed agents that Goodyke has received packages from Custom Engraving at his home address. (See Fact B-15c, supra) A package from Custom Engraving was scheduled for delivery at Goodyke's home address on April 1, 2008. (See Fact B-15c, supra) The affidavit provides that Special Agent Sieg verified that Goodyke lived at the subject premises. (See Fact B-17 and 18, supra)

The foregoing information provided in the search warrant affidavit does not contain any

13

reference to paragraphs 15(b), 15(d) and 16 of the affidavit or exhibits 11, 12 and 13. This information, which was completely independent of the search of the packages at the UPS facility, provides sufficient probable cause to support the search warrant for defendant Goodyke's residence.

IV. CONCLUSION

For the reasons set forth above, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Larry Goodyke's Motion to Suppress (doc. #89).

Counsel are reminded they have ten days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

                                                          */s/ Sarah W. Hays*
                                                          SARAH W. HAYS
                                        UNITED STATES MAGISTRATE JUDGE